# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **RUBEN CABLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:07-CV-1371-VEH** |
| | ) |
| **HUNTSVILLE CITY BOARD OF** | ) |
| **EDUCATION HIGHLANDS** | ) |
| **ELEMENTARY - MIKE** | ) |
| **LIVINGSTON,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION

## I.     INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Ruben Cable ("Cable"), who is proceeding *pro se*, initiated this employment discrimination case on July 24, 2007, against Defendants Mike Livingston ("Livingston"), Highlands Elementary ("Highlands"), and Huntsville City School Board (the "Board").  (Doc. 1 at 1).  On August 27, 2007, Cable filed an amended complaint alleging various Title VII claims, due process violations, and defamation. (*See generally* Doc. 5).

More specifically, Cable's amended complaint contains four causes of action: count one is for wrongful termination; count two is for discrimination (on the basis

of race and gender); count three is for harassment; and count four is for defamation. (Doc. 5 ¶¶ 10-13).  Defendants Livingston and the Board filed their collective answer (Doc. 10) on October 9, 2007.[1]

The court now has before it  Defendant Livingston and the Board's Motion for Summary Judgment (Doc. 18) filed on June 26, 2008, along with their supporting materials.  (*See* Docs. 19, 20).  Because Cable is representing himself, the court entered a Notice and Scheduling Order (Doc. 21) on June 30, 2008, which provided him with special instructions on how to respond to Defendants' Motion for Summary Judgment and giving him a specific due date.  This was in addition to entering the court's Uniform Initial Order on December 3, 2007, which contains the standard requirements for the parties regarding summary judgment.  (Doc. 11 at App. II).

After obtaining an extension of time (Doc. 28; margin order dated July 25, 2008), Cable filed his opposition and related evidence (Docs. 29-31) on August 20 11, 2008.  Defendants filed their reply brief (Doc. 32) on September 2, 2008.  As discussed more fully below, the court finds that Defendants' Motion for Summary Judgment is due to be granted.

---

[1]  In their answer, Defendants point out that Highlands is not a legal entity that is appropriately subject to suit.  (Doc. 10 at 1 n.1).  Instead, "it is a school operated by" the Board.  (*Id.*).  Defendants raise this argument again in moving for summary judgment.  (Doc. 18 at 1 n.1).  The court addresses the merits of this position later in the memorandum opinion.

## II.   STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R .Civ. P. 56. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citation omitted).  "The substantive law applicable to the case determines which facts are material."  *Fitzpatrick*, 2 F.3d at 1115 (citation omitted).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case,  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination.  *Grigsby v.*

*Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).[2]

Under the *McDonnell Douglas/Burdine* framework, a plaintiff first has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. Once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must <u>either</u> prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination <u>or</u> present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02. The court is aware that the summary judgment rule applies in job discrimination cases just as in other cases. *Chapman v. AI Transport*, 229 F.3d 1012, 1025 (11th Cir. 2000) (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

---

[2] Cable only argues that he has established a circumstantial case of discrimination. (*See generally* Doc. 30; *id.* at 3 (setting forth discussion of law to include arguments about establishing a *prima facie* case and pretext)).

## III.   STATEMENT OF FACTS[3]

### A.   Cable's Employment by the Board.

Cable ("Cable"), an African American male, was hired by the Board in 1993 as a special education aide at Stone Middle School.  AF No. 1.[4]  In 2003, Cable

_____

[3]  These are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[4]  In responding to Defendants' Statement of Facts in support of summary judgment, Cable failed to comply with the requirements of Appendix II to the court's Uniform Initial Order.  (Doc. 11 at App. II).  More specifically, Cable failed to respond "in *separately numbered paragraphs* that coincide with those of the moving party's claimed undisputed facts."  (Doc. 11 at App. II at 16 § D.2.a (emphasis by underlining added)).  Relatedly, Cable failed to make any "specific reference to those portions of the evidentiary record upon which the dispute is based." *Id.*  Accordingly, it is appropriate for this court to treat Defendants' Statement of Facts as admitted by Cable.  *Id.*  At the same time, whenever the record establishes that any potentially material facts are in dispute, they are stated in the manner most favorable to Cable.  *See Fitzpatrick*, 2 F.3d at 1115.

The designation "AF" stands for admitted fact and indicates a fact offered by Defendants that Cable has admitted in his written submissions on summary judgment (including in particular his failure to directly address it as explained in the above paragraph), in his deposition testimony, or by virtue of any other evidence offered in support of his case.  The court's numbering of admitted facts (*e.g.*, AF No. 3) corresponds to the numbering of Defendants' Statement of Facts as set forth in Doc. 19.  A number following a decimal point corresponds to the particular sentence within the numbered statement of facts.  For example, (AF No. 4.2) would indicate the second sentence of paragraph 4 of Defendants' Statement of Facts is the subject of the court's citation to the record.

applied for a teaching position with the Board and was interviewed by Livingston, the Principal of Highlands.   AF No. 2. Livingston recommended to the Board's Superintendent, Dr. Ann Roy Moore ("Dr. Moore"), that Cable be hired as a physical education teacher at Highlands.  AF No. 3.

Dr. Moore, an African-American, recommended Cable's employment to the Board and the Board accepted Dr. Moore's recommendation.  AF No. 4.1.  Cable began teaching physical education ("P.E.") at Highlands in January 2004.  AF No. 4.2.

### B.    The Board's Anti-Harassment Policies.

The Board has a Policy and Procedure Manual which has been made available to teachers at every school, including Highlands, during Cable's  employment with the Board.  AF No. 5.[5]  This Policy and Procedure Manual has a "Harassment" policy which states that any form of harassment, including racial harassment, is specifically forbidden and if any employee believes that he has been subjected to any form of harassment, he should contact the Board's Personnel Director immediately.  AF No. 6. Cable never made a complaint of harassment to the Board's Personnel Director

---

[5] The court notes that while Cable indicates in his opposition that he never received this policy, this statement is not contained in an affidavit nor does he cite to any other evidentiary support for this statement.   Further, he has not denied Defendants' statement that the policy was made available to teachers.

during Cable's employment at Highlands.  AF No. 7.

### C.     Livingston's Job Duties.

As principal, Livingston must ensure that all teachers follow his directives and applicable Board and school policies.  AF No. 8.  In order to fulfill this duty, Livingston must, among other things, provide verbal and written warnings to Highlands' teachers when he believes they are not following his directives or applicable policies.  AF No. 9.

### D.     Cable's Handling of Student Disciplinary Matters.

Cable alleges that students who caused trouble in other classes were sent to him by other teachers or by the principal for him to discipline.  AF No. 10.  Cable does not know whether other P.E. teachers employed by the Board were asked to perform similar tasks.  AF No. 11.

### E.     Cable's Leaving School During Work Day Without Permission.

Livingston required that all teachers at Highlands request and receive approval to leave the school campus during the school day.  AF No. 12.  On August 29, 2005, Livingston was told that Cable left the school campus without requesting or receiving permission and left his students with an instructional aide.  AF No. 13.

Livingston delivered a letter to Cable on August 30, 2005, concerning this violation of policy and requested that Cable  follow proper procedure.  AF No. 14.

Cable contends that the information provided to Livingston was incorrect, but he never discussed the matter with Livingston.  AF No. 15.

### F.    Cable Going to His Car During Work Hours.

On September 15, Cable could not be found by Livingston and other school officials because Cable had gone to his car.  AF No. 16.  Livingston gave Cable a note requesting that Cable let the office know when he was going to his car.  AF No. 17.

Cable claims that female teachers went to their cars during school hours as well. AF No. 18.1.  However, Cable does not know whether those female teachers received similar notes from Livingston, nor whether these females notified the office before going to their cars.  AF No. 18.2.

### G.    Cable's Failure to Turn in Lesson Plans.

Although Highlands' teachers were required to turn in copies of their lesson plans each Monday, Cable consistently failed to turn in his lesson plans in a timely manner.  AF No. 19.1.  When Livingston would request lesson plans after they had not been turned in on time, Cable would respond that he "was working on it."  AF No. 19.2.

On November 17, 2005, Livingston instructed Cable to provide a copy of all of his lesson plans since the beginning of the year, but Cable failed to do so.  AF No. 20. Livingston had a conference with Cable on December 6, during which Cable said he

was "working on it."  AF No. 21.

On December 20, 2005, Livingston delivered another letter to Cable concerning Cable's failure to provide the lesson plan book as of that date. AF No. 22.  Around two months later on February 13, 2006, Livingston gave another letter to Cable about Cable's failure to turn in his lesson plan book in a timely manner and directed him to provide his lesson plans.  AF No. 23.

Cable testified that he turned in "weekly lesson plans" to Livingston.  AF No. 24.1.  However, Cable did not deny Livingston's assertion that some lesson plans were not provided in a timely manner.  AF No. 24.2.

**H.     Cable's Failure to Attend Faculty Meetings.**

Although attendance at faculty meetings was mandatory, Cable missed several faculty meetings without giving any explanation.  AF No. 25.  On September 15, 2005, Livingston gave Cable a handwritten note about missing a faculty meeting.  AF No. 26.  Subsequently on April 6, 2006, Livingston sent a letter to Cable about Cable's "recurring problem" of missing mandatory faculty meetings and asked that Cable cease this conduct immediately.  AF No. 27.

Cable also left staff meetings while the meetings were still in progress, resulting in a letter from Livingston stating his concern about this behavior.  AF No. 28.  Cable admitted that he left a meeting while it was still in progress, but claimed that a white

9

female teacher left the meeting as well.  AF No. 29.  Cable does not know whether the white female teacher who left the meeting received a letter or a warning for leaving. AF No. 30.

**I.      Cable's Failure to Begin Class on Time.**

Livingston additionally had problems with Cable's beginning and ending his Physical Education classes on time.  AF No. 31.  Livingston would frequently see Cable talking on his phone or performing non-job related activities during class time. AF No. 32.

After a faculty meeting at which several teachers complained that Cable's P.E. classes were not beginning or ending on time, Livingston told Cable to make sure his classes began and ended  on time.  AF No. 33. On April 12, 2006, after Livingston had warned Cable, Quirante Sanders, an African-American teacher at Highlands, sent an e-mail to Livingston reporting that she and other teachers waited for 10 minutes during their students' P.E. class before Livingston arrived to take over the class.  AF No. 34. Livingston then gave a copy of the e-mail to Cable with a handwritten note that "I thought this had been corrected."  AF No. 35.  Cable admitted that his P.E. classes sometimes did not begin on time because his previous classes would run over schedule. AF No. 36.

**J.      Cable's Problems With a Field Trip to Milton Frank Stadium.**

In March 2006, Cable was in charge of taking his fifth grade students on a field trip to Sports Day at Milton Frank stadium.   AF No. 37.   Highlands' rules and procedures for field trips  provide that no fee is to be charged for field trips unless approved by the principal.  AF No. 38.

Although Cable did not receive prior approval from Livingston, Cable charged his students a fee to attend the field trip.  AF No. 39.  Livingston instructed curriculum specialist, Veronica Curtis, to ask  Cable to return the field trip money to the students. AF No. 40.

It is a violation of school policy to take a student off of school grounds without permission.  AF No. 41.  A parent of a student who attended the trip complained to Livingston and Cable that Cable took that student on the trip without the parent's permission.  AF No. 42.1.  Cable responded that he felt he had permission to take the student because he received a permission form for the student's sibling.  AF No. 42.2.

On March 31, 2006, Livingston sent a memorandum to all teachers about procedures for field trips.   AF No. 43.   Although the memorandum was sent to everyone and did not mention  any names or instances, Cable claims the memorandum was harassment by Livingston.  AF No. 44.

On April 25, 2006, Livingston sent Cable a letter expressing his concern about

11

Cable's failure to follow school policy with respect to collecting fees for the field trip and taking a student on the field trip without permission from the student's parent.  AF No. 45.  The letter does not accuse Cable of spending the money he collected for personal purposes.  AF No. 46.  Despite Cable's statement in the meeting with the parent and Livingston that he had a permission slip only for the sibling, Cable now claims that he had a permission slip for the student.  AF No. 47.

### K.     Cable's Failure to Supervise Students.

Livingston granted Cable's request to permit a non-school related karate class to use school facilities after hours with the warning that Cable must supervise the kids, and his failure to do so could cause him to lose his job.  AF No. 48.  In April 2006, karate students were allowed in the school without supervision by Cable.  AF No. 49.  On April 12, Livingston sent Cable a handwritten note about Cable's failure to watch the karate students and reminded Cable that failure to supervise these students could cause him to lose his job.  AF No. 50.

### L.     Cable's Failure to Follow Policy With Respect to Student Discipline.

On May 1, 2006, a student repeatedly bumped into Cable, and Cable called a police officer before informing Livingston about the incident.  AF No. 51.  Livingston gave Cable a memorandum stating that Cable's failure to permit Livingston to decide whether to call the police violated Highlands' policy.  AF No. 52.  Cable claims that

he tried to inform Livingston before calling the police officer but could not locate him. AF No. 53.

### M.   Cable's Failure to Enter Grades in a Timely Manner.

Because timely entry of grades was important in order to provide students with their grades in a timely manner, teachers were required to enter grades into the STI computer system by May 15, 2006, and were also supposed to keep copies of their grade books as back-up.  AF No. 54.  Cable left town on May 15, 2006, without entering his grades on STI and his grade books were missing.  AF No. 55.1.

Accordingly, when the rough drafts of the students' report cards were run through the school computer, Cable's grades were the only ones missing.  AF No. 55.2. Livingston sent a letter to Cable on May 16, 2006, about this failure to follow school policy with respect to entry of grades in a timely manner.  AF No. 56.

### N.   The Board's Non-Renewal of Cable's Employment Contract.

Although Cable was a non-tenured teacher, he was due to become tenured unless the Board provided  notice of non-renewal of his contract on or before the last day of the 2005-06 school year.  AF No. 57.  During the 2005-06 school year, Cable exhibited subpar job performance and repeatedly failed to abide by Livingston's instructions as well as Board and school policies.  AF No. 58.1.  Since it was Cable's third year and he would have received continuing service status ("tenure") unless his employment

contract was non-renewed, Livingston thought it important not to allow a teacher performing so poorly to attain tenure.  AF No. 58.2.  Accordingly, Livingston recommended to Dr. Moore that Cable's teaching contract not be renewed.  AF No. 58.3.

After reviewing Cable's personnel file, Dr. Moore concurred with Livingston and recommended to the Board that Cable's employment contract not be renewed and the Board voted to accept Dr. Moore's recommendation.  AF No. 59.  On May 17, 2006, the last day of the school year, Cable was given notice that his teaching contract was not being renewed for the 2006-07 school year.  AF No. 60.

### O.   Cable's Replacement.

Livingston recommended Julian Brown ("Brown"), an African-American male, to Dr. Moore to fill Cable's position.  AF No. 61.  Dr. Moore obtained the Board's approval and Brown began as P.E. teacher at Highlands in August 2006, where he is still currently employed.  AF No. 62.

### P.   Cable's EEOC Charge and Complaint.

Cable filed a Charge of Discrimination with the EEOC on November 2, 2006, in which he alleged that he was "harassed and terminated due to [his] race, black," but made no allegation of sex discrimination.  AF No. 63.  Cable filed a complaint on July 24, 2007, and an amended complaint on August 27, 2007, stating four claims against

the Board, Livingston, and Highlands.  AF No. 64.

Highlands is not a separate legal entity, but rather a building owned and controlled by the Board.  AF No. 65.

Cable's first claim is "Wrongful Termination" alleging that Livingston create a hostile "work place through written harassment, false accusations, discrimination and defamation" and the Board "denied renewal of contract without due process" by failing to give Cable "the chance to defend his case of any accused problems brought before the board."  AF No. 66.  Cable's second claim of "Discrimination" alleges that Livingston made "racial comments" and that Cable was treated differently than female teachers.  AF No. 67.

As to the "racial comments," Cable says that Livingston asked Cable to talk to African-American parents who were angry and upset about certain issues.  AF No. 68.1.  When he asked why he was asked to talk to these parents, Cable alleges Livingston said that Cable "know[s] how to talk to black people."  AF No. 68.2.

Cable's third claim is "Harassment," asserting that Livingston directed written harassment, threats, and false accusations towards Cable.  AF No. 69.  The alleged harassment consisted of the written letters provided by Livingston to Cable.  AF No. 70.  Cable says he did not know whether other teachers received similar letters or whether he was treated differently than other teachers.  AF No. 71.

Cable's fourth claim is "Defamation," in which Cable says that he was falsely accused in writing of using money collected for a field trip for other purposes and a fellow employee was instructed to tell Cable to give back the money collected for the field trip. AF No. 72. Specifically, Cable alleges he was defamed by Livingston's written warnings and his instruction to Veronica Curtis. AF No. 73.

## IV.   ANALYSIS

### A.   Cable's Federal Claims

#### 1.   Title VII Discriminatory Discharge

Whether based upon race or gender, Cable's Title VII discriminatory discharge claim is due to be dismissed. More specifically, Cable cannot establish a circumstantial evidence case of discrimination.[6]

##### a.   Cable cannot establish a *prima facie* case.

A claim of discriminatory discharge based upon circumstantial evidence requires proof from Cable that:

> (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less

---

[6] As noted above, Cable does not allege and offers no evidence to support a direct evidence case of discrimination under Title VII. The Eleventh Circuit has "defined direct evidence as 'evidence, which if believed, proves [the] existence of [the] fact in issue without inference or presumption.'" *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (citations omitted).

favorably than a similarly-situated individual outside his protected class.

*Maynard v. Board of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citation omitted).

As Defendants correctly maintain, Cable's *prima facie* case fails because he cannot

meet the fourth prong.

In particular, it is undisputed that he was replaced by a person within his

protected classes of race and/or gender (*i.e.*, another African-American male took his

teaching position).  As for the comparative alternative, while Cable claims that female

teachers who engaged in conduct similar to him were treated more favorably, he has

not supported this position with any underlying evidence.  For example, he has not

shown that "similarly situated non-tenured teachers outside his protected class were

retained" when the Board decided not to renew his contract.  (Doc. 19 at 15).

The standard to be applied in evaluating whether employees are similarly

situated is now a familiar one:

> To show that employees are similarly situated, the plaintiff must
> show that the "employees are similarly situated in all relevant respects. .
> . .  In determining whether employees are similarly situated . . . it is
> necessary to consider whether the employees are involved in or accused
> of the same or similar conduct and are disciplined in different ways."

*Knight v. Baptist Hospital of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)

(quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).

Additionally, the Eleventh Circuit has held that "[t]he comparator must be <u>nearly</u>

identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (internal citations omitted) (emphasis added); *see also Manicci v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.") (citation omitted).

As an alternative to establishing the fourth prong of his *prima facie* case, Cable has not shown how he meets the foregoing substantially similar principles governing appropriate comparator evidence. "*If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.*" *Holifield*, 115 F.3d at 1562 (11th Cir. 1997) (citation omitted ) (emphasis in original). Such is the situation here. Accordingly, summary judgment in favor of Defendants is due to be entered on Cable's discriminatory discharge claim.

### b.    Cable cannot establish pretext.

Alternatively, Cable's discriminatory discharge claim fails because he cannot show pretext. In addressing the issue of pretext, the Supreme Court has stated:

Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to

find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability.  Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. <u>For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, non-discriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred</u>. . . .

<u>Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors</u>.  Those include the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Reeves*, 530 U.S. at 148-49 (emphasis by underlining added) (citations omitted).

Therefore, despite a plaintiff's efforts to demonstrate an issue of fact regarding the truthfulness of an employer's asserted justification for an adverse action, judgment as a matter of law in favor of the employer is still appropriate if the record: (1) conclusively demonstrates some other, non-discriminatory basis for the decision; or (2) reveals only a weak issue of fact coupled with plentiful evidence that no illegal discrimination took place.

Here, Defendants have offered testimony and other evidence substantiating the

Board's decision not to renew Cable's contract, including Cable's poor work performance and repeated failures in following instructions and school policies. (Doc. 19 at 15). With the Board's articulation of a legitimate explanation for its decision not to renew Cable's contract, it is incumbent upon Cable to show pretext as to those reasons.

Further, it is not enough to demonstrate that the Board made a mistake or an error in judgment as an employer in reaching the conclusion to not renew Cable's contract. So long as the record shows that the Board had a good faith honest belief about its decision concerning Cable, then a material factual dispute as to pretext cannot be established. As the Eleventh Circuit succinctly and unequivocally explained pretext in *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466 (11th Cir. 1991):

> Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA [Title VII, or §1981] does not interfere. Rather, our inquiry is limited to <u>whether the employer gave an honest explanation of its behavior</u>." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988) (citations omitted). . . .
>
> <u>Elrod has offered no evidence to show that Sears' justification is unworthy of credence.</u>

*Elrod*, 939 F.2d at 1470 (emphasis added).

Here, Cable completely fails in his burden in opposing summary judgment in that

he has presented no evidence tending to show that the Board's reasons for not renewing his contract are a pretext for either race or gender discrimination.  "[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. 502, 515 (citation omitted) (emphasis in original).  Instead, Cable does not dispute the cited instances which led to his non-renewal, including  collecting money for a field trip (which Livingston believed was against school policy), being accused by a parent of taking a son on a field trip without permission, telling Livingston and the parent that he believed that a permission slip from the student's sibling was sufficient, failing to begin or end his classes on time, not speaking to Livingston prior to contacting the police about a student, and neglecting to enter grades in a timely fashion.  (Doc. 19 at 18).

Moreover, he has not adduced sufficient evidence from which a fact-finder could reasonably conclude that race or gender motivated the Board's decision-making process with respect to its treatment of him.  Accordingly, summary judgment in favor of Defendants on discriminatory discharge is alternatively appropriate for the independent reason that Cable has not demonstrated pretext.

### 2.    Title VII Racial Harassment

Cable asserts harassment as part of his wrongful termination count (Doc. 5 ¶ 10

(*i.e.*, count one)) as well as independently in a separate count.  (Doc. 5 ¶ 12 (*i.e.*, count three)).  Essentially, Cable maintains that he "endured lots of written harassment and threats from defendant to take away his job."  (*Id.*).

A plaintiff asserting harassment under Title VII must show:

> (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability.

*Nettles v. LSG Sky Chefs*, 211 Fed. Appx. 837, 839 (11th Cir. 2006) (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999) (en banc)).

Here, Cable's racial harassment claim fails as matter of law for at least two reasons.  One, he has not shown that any alleged statements and conduct about which he complains were <u>racial</u> in nature.  As explained in *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000), "the statements and conduct must be of a [racial] or [race]-related nature . . . before they are considered in determining whether the severe or pervasive requirement is met." (citing *Mendoza*, 195 F.3d at 1245), *abrogated on other grounds as recognized by Crawford v. Carroll*, 529 F.3d 961, 973, 74 (11th Cir. 2008)).  For the most part,[7] the incidents upon which Cable relies do not meet this

---

[7] As Defendants note, the only possible exception would be Livingston's alleged statement to Cable that he knows how to communicate with black people.

racially-connected element.

Two, and regardless of the race-related requirement, he has not met the severe or pervasive prong.  "Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component." *Mendoza*, 195 F.3d at 1246 (citation omitted). Assuming without deciding that Cable subjectively and reasonably perceived the purported racial harassment "as sufficiently severe and pervasive to alter the terms or conditions of [his] employment," he cannot meet the objective standard.  *Id.*

More specifically, the objective analysis involves consideration of the following four factors:

> (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.

*Id.* (citations omitted).  Additionally, a court "should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment." *Id.* (citations omitted).  In light of the above factors and considering the totality of the circumstances, Cable's claimed harassing conduct by Livingston does not objectively

meet the *Mendoza* line.  Accordingly, Defendants are entitled to summary judgment as to count three of Cable's amended complaint for his inability to show a *prima facie* case.[8]

### 3.    Other Title VII Discrimination Claims

Any other discrimination claims asserted by Cable are due to be dismissed because he is unable to show that he suffered an adverse employment action.  As the Eleventh Circuit recently summarized "the level of substantiality [needed] for a Title VII discrimination claim" when the complained action falls short "of an ultimate employment decision" such as failing to hire, demoting or firing, "we [have] required an employee to demonstrate she suffered 'a *serious and material* change in the terms, conditions, or privileges of employment' to show an adverse employment action."  *See Crawford v. Carroll*, 529 F.3d 961, 970-71 (11th Cir. 2008) (citations omitted).

Therefore, with the exception of his dismissal, Cable has not met the adverse employment element because the other asserted grounds for discrimination lack the requisite substantiality, seriousness, and materiality to be actionable under Title VII. These include Cable's complaints about being disciplined unfairly and receiving written warnings.  Cable's *prima facie* case also fails as to these other claims because

---

[8]  Because the court concludes that Cable is unable to establish a *prima facie* case of racial harassment, it does not reach the merits of the Board's affirmative defense argument.

he is unable to show that persons similarly situated to him were treated less harshly under the comparative prong reasoning set forth above.

Alternatively, even assuming that Cable has met a *prima facie* case as to these other Title VII discrimination claims, the Board has articulated legitimate explanations for its treatment of Cable over the course of his employment at Highlands, and Cable has not demonstrated pretext.   Accordingly summary judgment is alternatively appropriate  under the same pretext analysis relating to his discriminatory discharge claim.

### 4.      Title VII Gender Discrimination

It is undisputed that Cable's EEOC charge raises no issues about gender discrimination.  Instead, the charge is limited to race discrimination both as to the box checked and the substantive allegations:  "I believe I was discriminated against due to my race in that I was issued several letters of counseling from the principal (a white male)  . . . . I believe I was harassed and terminated due to my race, black in violation of Title VII of the Civil Rights Act of 1964, as amended."  (Doc. 20 at Ex. A at Ex. 4).

In contrast, Cable's amended complaint states that he was "treated differently wh[en] it came to arranging field trips and after school activities for the students when other teachers (females) w[ere] able to arrange field trips without being accused of using collected funds from the students to use for other purpose[s]."  (Doc. 5 ¶ 11).

25

Cable also alleges that "female teachers that were white walked out [of] meetings" and that "female teachers were able to walk to th[eir] cars to retrieve items . . . or send students" to gather personal belongings without being "single[d] out" like he was. (*Id.*).

In the Eleventh Circuit, a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004) (internal quotations and citations omitted). At the same time, the Eleventh Circuit has noted a reluctance "to allow procedural technicalities to bar claims brought under [Title VII,]" and that as a result "the scope of an EEOC complaint should not be strictly interpreted[.]" *Id.* (internal quotations and citations omitted).

Here, the court struggles to see how claims of gender discrimination (or sexual harassment) reasonably arise out of the allegations contained in Cable's EEOC charge. Instead, all of the assertions in the EEOC charge relate solely to his complaints about race discrimination and/or racial harassment. "Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate." *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (citations omitted); *see also Green v. Elixir Industries, Inc.*, 152 Fed. Appx. 838, 840

(11th Cir. 2005) ("In *Gregory*, though the plaintiff failed to check the box labeled 'retaliation' on the EEOC charge, the charge nonetheless alleged facts that reasonably encompassed a claim for retaliation.") (citation omitted); *Green*, 152 Fed. Appx. at 840 ("By contrast, all of the factual allegations contained in Green's EEOC charge relate to his termination and none relate to a retaliation claim."); *see also Hillemann v. University of Central Fla.*,167 Fed. Appx. 747, 749 (11th Cir. 2006) ("Therefore, the district court properly determined that Plaintiff's judicial claims about the Small Business positions Plaintiff did not mention in his EEOC charge were procedurally barred."). Accordingly, Cable's gender discrimination claims asserted in count two are alternatively due to be dismissed as procedurally barred.

### 5. Title VII claims against Livingston

Livingston is alternatively due summary judgment on all of Cable's Title VII claims because he is not an "employer" within the meaning of the statute, and accordingly is not appropriately subject to suit under it as a matter of the law. As Defendants properly explain, "[t]he relief granted under Title VII is against the employer, not [against] individual employees whose actions constitute a violation of the Act." *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (internal quotations and citations omitted).

6.   Due Process

Cable asserts due process violations relating to his dismissal as a part of count one.  (Doc. 5 ¶ 10).  However, it is undisputed that Cable was a non-tenured teacher with the Board.  It is similarly undisputed that the Board provided Cable with written notice of the non-renewal of his teaching contract on or before the last day of school.

Accordingly, any due process claims asserted by Cable in count one of his amended complaint for the non-renewal of his contract without a hearing fail as a matter of law.  As Defendants properly analyze in their brief:

> "It is well-settled under Alabama law that a non-tenured or probationary teacher does not have a right to be re-employed." *Wright v. Tarrant City Board of Education*, 518 So. 2d 144, 145 (Ala. Civ. App. 1987).  "It is also well-settled that a non-tenured teacher is not entitled to a hearing on the issue of the non-renewal of [his] contract." *Id.* (citing Alabama Code §§ 16-24-2 and 16-24-9**)**.  "The basic legal requirement regarding non-renewal of a non-tenured teacher's employment contract is that [he] be given proper notice of its non-renewal-namely 'on or before the last day of the term of the school in which the teacher is employed.'" *Id*. (quoting Alabama Code § 16-24-12).

(Doc. 19 at 12).

Relatedly "[t]he success of due process arguments depends upon the finding of a constitutionally protected property interest in the expectation of continued employment or of a liberty interest having been infringed upon by the State; absent such interest, no due process protections attach." *Gray v. Board of Regents of Univ.*

*System of Georgia*, 150 F.3d 1347, 1350 (11th Cir. 1998) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972)).  Therefore, as a non-tenured teacher, Cable had no expectation of continued employment and, relatedly, had no right to a pre-termination hearing.  Further, in receiving the prior written notice from the Board, Cable received the process to which he was legally entitled under Alabama law.  Accordingly, Cable's due process claims are due to be dismissed.

### B.    Cable's State Law Claim of Defamation

Cable maintains in count four that he was falsely accused and labeled an untrustworthy person relating to money that he had collected for a student field trip.  (Doc. 5 ¶ 13).  Cable also references defamation in count one.  (Doc. 5 ¶ 10).  Cable's defamation allegations are due to be dismissed for immunity reasons, and alternatively on the basis of qualified privilege.[9]

### 1.    Immunity

Turning to sovereign immunity first, as Defendants appropriately set forth in their brief:

> "Municipal or county boards of education are local agencies of the state and partake of the State's sovereign immunity" with respect to tort claims.  *L.S.B. v. Howard*, 659 So.2d 43, 44 (Ala. 1995).  Without

---

[9]  Because the court agrees with Defendants that dismissal is appropriate on immunity and qualified privilege grounds, it does not reach the merits of their *prima facie* challenges to the defamation count.

question, the Board is absolutely immune for its common law torts. Accordingly, the defamation claim brought by Cable against the Board is due to be dismissed.

Moreover, "an individual who acts as an agent of a municipal or county board of education may also share in the State sovereign immunity if the act complained of was committed while that person was performing a discretionary function." *L.S.B.*, 659 So.2d at 44; *see Hill v. Allen*, 495 So.2d 32 (Ala. 1986).

A state agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's ...exercising his or her judgment in the administration of a department or agency of government, including but not limited to examples such as . . . hiring, firing, transferring, assigning, or <u>supervising personnel</u>.

*Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000) (emphasis added).

(Doc. 19 at 26).

Therefore, it is beyond question that the Board is entitled to sovereign immunity as to Cable's defamation claim. As for Livingston's potential liability, there is no doubt (and Cable does not challenge) that any alleged defamatory remarks made relate to his role as Cable's supervisor while acting in a discretionary capacity. Further, there is no indication in the record that the purported defamatory communication was done willfully, maliciously, fraudulently, in bad faith, beyond authority, or under a mistaken interpretation of the law such that agent immunity should not apply to Livingston. (Doc. 19 at 27); *see also Milton v. Espey*, 356 So. 2d 1201, 1203 (Ala. 1978) (setting

forth exceptions to immunity defense applicable to state officers sued for individual

civil liability).  Therefore, Cable's defamation count is due to be dismissed against both

the Board and Livingston.

### 2.    Qualified Privilege

As for qualified privilege, as the Supreme Court of Alabama has explained:

> "'Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged.... The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is ... moral in its nature....'"
>
> *Berry v. City of New York Ins. Co.*, 210 Ala. 369, 371, 98 So. 290, 292 (1923). "The only variety of defamation not subject to the defense of qualified privilege is defamation committed with actual malice (as distinguished from implied malice).  A plaintiff cannot prevail against an established defense of qualified [or conditional] privilege unless he has pleaded and proved defamation committed with actual malice." *Ex parte Blue Cross & Blue Shield of Alabama*, 773 So.2d 475, 479 (Ala. 2000) (citation omitted).

*Brackin v. Trimmier Law Firm*, 897 So.2d 207, 224 (Ala. 2004).[10]  Here, Cable has not

only failed to plead the existence of actual malice, but also he lacks any evidence to

---

[10]  The court notes that the *Berry* decision was subsequently limited on other grounds by the case of *McDaniel v. Crescent Motors*, 31 So.2d 343, 345 (Ala. 1947) ("The principle of our cases [relating to publication] of *Berry v. City of New York Ins. Co.*, 210 Ala. 369, 98 So. 290; *Ferdon v. Dickens*, 161 Ala. 181, 49 So. 888, should not be extended beyond the circumstances there stated.").

prove it.  Accordingly, summary judgment is alternatively appropriate on Cable's

defamation count on the separate ground of qualified privilege.

### C.   Abandoned Claims and/or Undeveloped Arguments in Opposition to Summary Judgment

Cable's opposition to summary judgment is materially deficient.  While Cable's

"Table of Contents" included in his opposition indicates that it contains a section called

"Discussion of Law" beginning on page 19 (Doc. 30 at 3), as Defendants point out,

Cable's written opposition actually only consists of three primary sections:  1) "Nature

of Case;" 2) "Parties and Jurisdiction;" 3) "Statements of Facts Presented;" and no

argument section.  (*See generally* Doc. 30; *id.* at 4-5).  Moreover, while Cable has

attempted to set forth a statement of purported facts, for the most part, he has failed to

include any corresponding evidentiary citations.

Relatedly as a result of these significant omissions, it is appropriate for this court

to treat as abandoned the claims that Cable has alleged or may have attempted to

include in his complaint, but that he has failed to address on summary judgment.[11]  *See,*

*e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim

---

[11]  Although Cable is proceeding *pro se*, he must still obey all rules and orders
entered by the court, including those requirements applicable to opposing summary
judgment.  *See, e.g., Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("Still,
once a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of
court, including the Federal Rules of Civil Procedure.").

abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001); *cf. McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment").

Alternatively, Cable has insufficiently opposed the entry of summary judgment in Defendants' favor by omitting any discussion of and/or failing to factually develop any claims that remain for trial. *Dunmar Corp.*, 43 F.3d at 599 ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.") (citation omitted)). "[T]he onus is upon the parties to formulate arguments[.]" *Id.* (citation omitted). Relatedly, this

33

court is not responsible for satisfying Cable's burden in responding to summary judgment by suggesting, on its own initiative, any material issues that may exist for a jury to resolve as to both his stated as well as any undeveloped claims.  Therefore, because Cable has failed to carry his burden in setting forth facts (with corresponding evidentiary support) and constructing his own contentions relating to his claims (both stated and any unstated) that he may have against Defendants, summary judgment is due to be entered in favor of Defendants for this separate and independent reason.

### D.   Cable's Claims (If Any) Against Highlands

In their answer and again in their Motion for Summary Judgment, Defendants point out that Highlands falls under the umbrella of the Board as a school operating under its jurisdiction and that, accordingly, Highlands is not subject to suit as a separate entity.  Cable has never disputed this position.  In fact, in describing the parties (Doc. 5 ¶ 8) in his amended complaint and again at the last page of that pleading, Cable lists only Livingston and the Board as the defendants.  (Doc. 5 ¶ 14(A)-(B)).  Accordingly, all claims against Highlands are due to be dismissed on the grounds that it is not a proper party to the litigation.

Alternatively as Defendants note, because summary judgment is otherwise appropriate for the Board, a dismissal of the case is similarly due to be entered in favor of Highlands.  (*See* Doc. 18 at 1 n.1 ("In any event, summary judgment in favor of the

[Board] would also necessarily include a dismissal of the claims against [Highlands] as well.")).  Accordingly, a dismissal in favor of Highlands is also appropriate on the basis of the foregoing analysis relating to the Board on summary judgment.

## V.      CONCLUSION

Therefore, as analyzed above, Defendants' Motion for Summary Judgment is due to be granted, and Cable's amended complaint against Defendants is due to be dismissed with prejudice.   The court will enter an order consistent with this memorandum opinion.

**DONE** and **ORDERED** this the 31st day of October, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

35